UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROCKETFUEL BLOCKCHAIN COMPANY,

                                        Plaintiff,

                    -against-

ELLENOFF GROSSMAN & SCHOLE LLP,

                                        Defendant.

21 Civ. _____ (____)

COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY

Plaintiff RocketFuel Blockchain Company, for its Complaint against defendant Ellenoff Grossman & Schole LLP, by its attorneys Scarola Zubatov Schaffzin PLLC, alleges:

*The Parties*

1.      Plaintiff RocketFuel Blockchain Company is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in the State of Nevada.

2.      Defendant Ellenoff Grossman & Schole LLP is a law firm limited liability partnership organized and existing under the laws of the State of New York with its principal place of business in the State of New York, and with all of its members being natural persons who are citizens and residents of states other than the State of Nevada.

*Jurisdiction and Venue*

3.      This Court has personal jurisdiction over the defendant as it is a citizen of the State of New York.  Jurisdiction in this court is proper under 28 U.S.C. §1332(a) because the

plaintiff is a citizen of the State of Nevada and defendant is a citizen of the State of New York

(with no member of defendant being a citizen of the State of Nevada), and the amount in

controversy in this case (the amount the plaintiff seeks to recover) exceeds $75,000 exclusive of

interest and costs.

4.      Venue in this Court is proper under 28 U.S.C. §1391(b)(l) & (2)

because defendant resides in the State of New York and a substantial part of the events and

omissions giving rise to this case occurred in the State of New York.

*Facts Pertinent to More than One Cause of Action*

5.      This case arises from legal malpractice and breach of fiduciary duty by

defendant by Ellenoff Grossman & Schole LLP ("EGS") in connection with defendant's

representation of RocketFuel Blockchain Company ("RocketFuel") relating to a reverse

acquisition transaction that was to take place in which RocketFuel would be acquired by B4MC

Gold Mines, Inc. ("B4MC") in exchange for shares of B4MC common stock.

6.      RocketFuel entered into an Engagement Agreement with EGS in March

2018.  (A copy of the retainer agreement is Exhibit A.)

7.      The contemplated transaction closed on June 27, 2018.

8.      Subsequent to that closing, EGS continued to represent RocketFuel (which

became a 100% subsidiary of B4MC) and also then represented B4MC.

9.      EGS's services included conducting due diligence, preparation of the

contribution agreement related to the transaction and related closing documents for the reverse

acquisition, preparation of the associated SEC filings, including a "Super 8K" report, and

preparation of B4MC's quarterly and annual reports to the SEC (Forms 10-K and 10-Q).

10.      In September 2018, B4MC changed its name to RocketFuel Blockchain,

Inc. ("RBI").

11.     RocketFuel's only assets at the time of the transaction were five patent applications assigned to RocketFuel by Joseph Page who was one of its shareholders.

12.     In consideration of the assignments, Page received 300 shares of RocketFuel common stock, which he subsequently exchanged for 5,100,394 shares of B4MC (now known as RBI) common stock at the closing of the reverse merger transaction.

13.     Today, based upon the transactions in the publicly traded shares of RBI, Page received value equivalent of approximately, and no less than, $11,000,000.

14.     In May 2019 Joseph Page resigned as an officer and director of RBI.

15.     Subsequently, RocketFuel, through patent counsel, discovered that three of those patent applications assigned by Page had been previously abandoned and were otherwise not as expected prior to Page's assignment to RocketFuel, and that all five had substantial deficiencies

16.     Page's filings had been on a private and confidential basis, and there had been no way for RocketFuel or B4MC or any other person or party to learn of these deficiencies from a public record without assistance of EGS or other similar assistance.

17.     The result of these deficiencies was that the assignments were of little or no value and might not be salvageable at all despite best efforts that RocketFuel might make.

18.     A substantial part of EGS's engagement, and its actual work in fact, per its retainer agreement and prior to the consummation of the reverse merger transaction, was to conduct due diligence with regard to the existence, proper form and good order, and ultimate assignment to RocketFuel, of the five patent applications, including confirmation that there were no such deficiencies (including such that were not readily apparent from the public record).

19.     RocketFuel (together with RBI) has sued Page relating to these

transactions and that lawsuit is pending in United States District Court in Las Vegas, Nevada.

20.     Recently, Page has filed a motion in that case (a copy of Page's brief dated

February 8, 2021, supporting that motion is Exhibit B) in which he states in substance that he

had disclosed the deficiencies in the patent applications to EGS, including during EGS's due

diligence work.

21.     For example, at pages 9-10, Page alleges:

"ELLENOFF IP specialist attorney Steven Keefe reviewed directly with PAGE
in telephonic interview, among other things, the specific question of
abandonment of the applications and the viability of reviving the applications to
normal examination process.  PAGE fully submitted to Attorney Keefe's
examination without reservation whatever and fully disclosed all issues relating
to the patent applications.  At that time, PAGE transmitted to RocketFuel and
their attorney Keefe the entire patent record (IFW) of all transactions in the
USPTO for all five applications."

22.     On Page 19 Page alleges:

"Further for precision, ELLENOFF specifically assigned their intellectual
property specialist attorney Stephen L. Keefe to carefully review the matter on
behalf of Plaintiffs and directly interview PAGE with specific regard to patent
application abandonment, revival, and assignment.

"As part of Keefe's investigation, PAGE transmitted directly to him, the full
Image File Wrappers for all five patent applications. Attorney Keefe did
diligently perform this review, and the review included follow-up conversations
with PAGE.

"These conversations were specific and detailed, and they were primarily
directed to the topics of abandonment of the applications and the intention of the
Company to revive them as provided by the normal examination rules of the
Patent Office. These conversations between PAGE and Plaintiffs' attorney Keefe
[Fn. 1 While Page repeatedly refers to EGS as 'plaintiff's attorney,' at the time in
question (prior to the closing of the reverse acquisition) EGS represented RocketFuel,
which was Page's company, and not B4MC.] additionally included specific
discussion about the viability of assignments done for abandoned applications."

23.     In his related Declaration also filed on February 8, 2021 (a copy is part of

Exhibit B), at pp. 24-25, Page states:

"5)  I, Joseph Page, as owner of certain intellectual property, conveyed by assignment five patent applications to RocketFuel Blockchain Company in anticipation of the transaction.

"6)  In cooperation with Ellenoff Grossman & Shole specialist intellectual property attorney Stephen L. Keefe, I submitted to his review and examination and provided to him all things asked of me.

"7)  Interviews with Attorney Keefe included detailed personal telephonic interviews, and additionally written matter related to prosecution of said patent applications.

"8)  Specifically, I downloaded from the USPTO a current copy just prior to transmission of same to Mr. Keefe.  I transmitted by electronic mail a full, complete and unedited copy of the Image File Wrapper document from the United States Patent and Trademark Office for each patent application subject of the agreement.

"9)  Further, I was examined via telephonic interview by Attorney Keefe with specific regard to patent application abandonment, viability of the applications through 'revival', and further assignment of applications is such condition."

24.     Page has made similar statements in other correspondence and pleadings.

25.     The crux of Page's defense in that case is that he had revealed his fraudulent assignment of the abandoned patent applications — the basis for his receipt from RocketFuel of ownership in it and his later trade of his ownership in RocketFuel for an ownership interest in B4MC/RBI — to EGS and others including RocketFuel.

26.     RocketFuel was not apprised of those facts by Page or by EGS.

27.     RocketFuel relied upon EGS to ascertain any facts of that sort in its due diligence work.

28.     If EGS knew — whether from Page or its other due diligence work — and intentionally did not disclose these facts to RocketFuel, it was complicit in fraudulent activity by Page to the direct detriment and direct harm of RocketFuel and others.

29.     From Page's allegations, if true, EGS knew about the deficiencies in the patent applications prior to the closing of the reverse acquisition transaction in June 2018, and yet made no attempt to disclose Page's admission of fraud to RocketFuel or any other person who would face harm from that fact.

30.     If EGS did not actually know about the deficiencies in the patent applications, it was negligent, and had violated its duty of care in performing due diligence, and not actually ascertaining the truth as to the condition of the patent applications and/or not taking action upon that knowledge by disclosure to RocketFuel and as otherwise alleged herein — all in a manner inconsistent with the standard of care for attorneys performing similar work in similar circumstances and in the same relevant jurisdiction and locations.

31.     RocketFuel was damaged by EGS's intentional failure to disclose, or else by its negligent failure to discover or negligent failure to disclose, as alleged above.

32.     For example, EGS made no attempt to advise RocketFuel of the true status of the patent applications as abandoned and deficient so as to permit and enable RocketFuel to avoid and/or avoid delivery of valuable shares in RocketFuel to Page.

33.     EGS also did not disclose the true status of the patent applications as abandoned and deficient in the contribution agreement for the reverse merger transaction.

34.     As of June 27, 2018, RocketFuel became a subsidiary of B4MC (now, RBI), and EGS continued to draft B4MC/RBI's SEC filings, as contemplated by the Engagement Agreement.

35.     The Super 8-K, prepared by EGS and filed on June 29, 2018 and the subsequent 10-Ks and 10-Qs that were drafted by EGS, did not contain any disclosure of the patent applications as abandoned and deficient.

36.     EGS never informed RocketFuel and B4MC (now, RBI) of any deficiencies in the patents.

37.     As a direct and proximate and "but for" cause of EGS's errors and omissions alleged herein, RocketFuel suffered damage in innumerable ways, beginning with value it conveyed to Page that it would not have had it been properly informed and in all of the ways it has had to take extensive and costly remedial steps after learning of the true condition of the patent applications.

38.     And above all, as a direct and proximate cause of EGS's intentional and/or negligent misconduct, Page has been able to walk away with value in an amount in excess of $11,000,000 in exchange for conveyance of nothing and (certainly without conveyance of what was understood by all involved to have been the subject of his conveyance and the basis for his receiving value).

39.     By reason of the foregoing, EGS is liable to plaintiff RocketFuel Blockchain Company for negligence and legal malpractice, breach of contract and breach of fiduciary duty.

FIRST CLAIM FOR RELIEF
(Negligence and Legal Malpractice)

40.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

41.     EGS's conduct as alleged herein breached the applicable standard of care in the exercise of an attorney's professional duties as EGS owed it to RocketFuel so as to constitute negligence by an attorney and legal malpractice.

42.     Those breaches were the direct and proximate and "but for" cause of damages to RocketFuel, including the actual and financial damages alleged herein.

43.     By reason of and as a result of the negligence by an attorney and legal malpractice committed by EGS, RocketFuel has sustained and will continue to sustain financial losses and actual damage in its business.

44.     RocketFuel is therefore entitled to recover damages from EGS in amounts to be determined at trial as well disgorgement of the fees paid to EGS.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract for Fees)

45.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

46.     RocketFuel and EGS entered into a valid and enforceable contract in the parties' retainer agreement.

47.     EGS's conduct herein breached its contract with RocketFuel and RocketFuel is entitled, among and addition to other relief alleged and sought herein, to recover fees it paid to EGS.

48.     RocketFuel is therefore entitled to recover damages from EGS in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

49.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

50.     By reason of their attorney-client relationships, EGS owed RocketFuel a fiduciary duty.

51.     EGS breached that fiduciary duty by failing to apprise RocketFuel of the facts as to the status of the patent applications alleged herein.

8

52.     By reason of and as a result of that breach, RocketFuel suffered damages, including the actual and financial damages alleged herein.

53.     RocketFuel is therefore entitled to recover damages from EGS in amounts to be determined at trial.

54.     In addition, to the extent that EGS's conduct was willful and/or reckless and wanton and/or was of such character as would shock the conscience or otherwise warrant an award of exemplary or punitive damages in its favor and against EGS in an amount to be determined at trial.

WHEREFORE, plaintiff RocketFuel Blockchain Company demands judgment in its favor and against defendant as follows:

a.     on the First Claim for Relief, for negligence by an attorney and legal malpractice in an amount to be determined by the Court not less than $75,000 and as alleged herein and to be proven at trial;

b.     on the Second Claim for Relief, for breach of contract for fees in an amount to be determined by the Court and as alleged herein and to be proven at trial; and

c.     on the Third Claim for Relief, for breach of fiduciary duty, in an amount to be determined by the Court and as alleged herein and to be proven at trial, including exemplary or punitive damages as allowed by law;

together with costs, attorneys' fees and interest all in the fullest amount allowed at law on each such claim and together with such other and further relief for plaintiff RocketFuel Blockchain

Company and against defendant Ellenoff Grossman & Schole LLP as the Court may deem just

and proper.

Dated: March 1, 2021

SCAROLA ZUBATOV SCHAFFZIN PLLC

By _____

      Richard J.J. Scarola
*Attorneys for Plaintiff RocketFuel*
 *Blockchain Company*
1700 Broadway — 41st Floor
New York, NY 10019
Tel.: (212) 757-0007

10