```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ROCKETFUEL BLOCKCHAIN COMPANY and    :
ROCKETFUEL BLOCKCHAIN, INC.,         :
                                     :
                         Plaintiffs, :
                                     :
           -against-                 :
                                     :
ELLENOFF GROSSMAN & SCHOLE LLP,      :
                                     :
                         Defendant.  :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __1/7/22__

21-CV-1764 (VEC)

**MEMORANDUM
OPINION AND ORDER**

VALERIE CAPRONI, United States District Judge:

Defendant Ellenoff Grossman & Schole LLP ("EGS"), a law firm, represented Plaintiff RocketFuel Blockchain Company ("Rocketfuel") in a reverse acquisition transaction in which B4MC Gold Mines, Inc. ("B4MC"), a shell company later renamed Rocketfuel Blockchain, Inc. ("RBI", the other Plaintiff in this case), acquired Rocketfuel in exchange for a controlling interest in RBI common stock. RocketFuel alleges that EGS was retained in part to conduct due diligence of Rocketfuel's assets, including five patent applications that had been assigned to Rocketfuel by one of its co-founders, Joseph Page ("Page"), all of which Rocketfuel and RBI later learned were legally deficient. Although Plaintiffs have sued Page in Nevada, in this action, they lay fault with EGS. EGS, in turn, has moved to dismiss. For the following reasons, EGS' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

On January 8, 2018, Joseph Page ("Page"), Rocketfuel's co-founder and treasurer; Gert Funk ("Funk"), Rocketfuel's co-founder and president; and Bennett Yankowitz ("Yankowitz"), president of B4MC (later RBI) executed a letter of intent ("LOI") for a reverse merger, in which

1

Page and Funk would form Rocketfuel and Page would transfer his patent applications directly to Rocketfuel. *See generally* Touitou Decl., Dkt. 34-3, Ex. 3 (LOI); Second Amended Complaint ("SAC"), Dkt. 27 ¶¶ 7–8, 21. In the reverse merger, Rocketfuel shareholders would exchange their shares in Rocketfuel for 75 percent of the total common stock of B4MC, leaving Rocketfuel a wholly-owned subsidiary of B4MC-turned-RBI. Ex. 3 at 2. In exchange for the assignment of his patent applications, Page would receive over 5 million shares of RBI stock. SAC ¶¶ 21–22.

Funk, on behalf of Rocketfuel, retained EGS to represent Rocketfuel in the reverse merger transaction. The firm's Engagement Agreement was dated March 2, 2018. SAC ¶¶ 13–14; *see generally* SAC, Ex. A (Engagement Agreement).

The transaction closed on June 27, 2018, at which point Rocketfuel became a wholly-owned subsidiary of RBI. SAC ¶¶ 17–18. Page left Rocketfuel in May 2019, after which Plaintiffs allegedly learned that the patent applications he had assigned to Rocketfuel were legally deficient. *Id.* ¶¶ 9, 23–24, 31–34. Plaintiffs brought this lawsuit on March 2, 2021, *see* Compl., Dkt. 1, and filed a SAC on June 18, 2021. *See generally* SAC, Dkt. 27. They now contend that EGS committed legal malpractice, *id.* ¶¶ 104–108; breached the terms of the retainer agreement, *id.* ¶¶ 109–112; and breached a fiduciary duty that it owed to Plaintiffs, *id.* ¶¶ 113–119. Additionally, Plaintiffs seek a declaratory judgment that EGS cannot use a separate settlement agreement as a defense to any claims in this action. *Id.* ¶¶ 120–154. EGS, in turn, has moved to dismiss. *See* Not. of Mot., Dkt. 33. EGS asserts that Plaintiffs' claims are barred by the *in pari delicto* doctrine; that Count I fails to state a legal malpractice claim; that Counts II and III are duplicative of the deficient claim in Count I; and that Counts IV through VI, seeking declaratory relief, fail to satisfy the case or controversy requirement. Def. Mem., Dkt. 35 at 11.[1]

---

[1] The parties dispute whether the exhibits EGS submitted in support of its motion to dismiss can be considered by the Court. Pls. Opp., Dkt. 36 at 1 n.1; Def. Reply, Dkt. 37 at 3 n.4. EGS' exhibits include public

# DISCUSSION

## I.     Legal Standard

To survive EGS' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

## II.    The *In Pari Delicto* Doctrine Does Not Bar Plaintiffs' Claims

The common law doctrine of *in pari delicto* precludes claims when a dispute is "between two wrongdoers." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (2010).[2] EGS argues that,

---

SEC filings, public documents from the Nevada action, and documents pertaining to the nature of EGS' agreement with Plaintiffs, such as the parties' Engagement Agreement, which is also an exhibit to the SAC. *See generally* Touitou Decl., Dkt. 34. It is proper for the Court to consider these exhibits. *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09-CV-3729, 2010 WL 3291582, at *4 (S.D.N.Y. Aug. 17, 2010) (a "court may consider matters outside the pleading for the purposes of adjudicating a motion to dismiss if those documents are 'integral' to a plaintiff's claims") (internal quotation marks and citation omitted); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit") (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

2      The parties dispute whether New York or Nevada law governs this issue. *See* Def. Mem. at 12 n.38; Pls. Opp. at 9–10; Def. Reply at 1 n.2. New York's choice of law rules require the Court to apply New York law to affirmative defenses to claims that are proceeding under New York law. *See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 n.16 (S.D.N.Y. 1998) (holding New York law applied to the affirmative defense of *in pari delicto* because New York law applied to the substantive claim). The case to which Defendant cites for the proposition that imputation is governed by the law of incorporation — here, Nevada — answered the question of whether federal common law preempted state imputation law and not whether state choice-of-law rules defer to the law of the place of incorporation. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 84–85 (1994). Regardless, because New York and Nevada share the same approach to the *in pari delicto* defense, *see In re Amerco*

because Page was an agent of Rocketfuel, his knowledge of and wrongdoing with respect to the deficient patent applications was imputed to the company under basic agency law, and, therefore, EGS and Rocketfuel are in equipoise as wrongdoers, necessitating dismissal of the case. Def. Mem. at 12–13. But the very precedent to which EGS cites demonstrates that *in pari delicto* cannot apply when "the corporation is actually the agent's intended victim." *Kirschner*, 15 N.Y.3d at 466 (citation omitted). This concept — the adverse interest doctrine — precludes imputation of an agent's knowledge or actions to a principal when the agent's actions were wholly adverse to the principal. *Id.* at 466–67.

Based on the allegations in the SAC, which the Court accepts as true for the purposes of a motion to dismiss, *see Gibbons*, 703 F.3d at 599, the adverse interest doctrine applies here. The SAC alleges that no one other than Page knew that the patent applications were legally deficient. SAC ¶¶ 9, 28, 32, 34–35, 48(e)–(f). Under Plaintiffs' version of the facts, Page intended to defraud Rocketfuel. Pls. Opp. at 12–14. New York law therefore precludes attributing Page's knowledge to Rocketfuel (and, derivatively, to RBI). *See Kirschner*, 15 N.Y.3d at 464; *Conway v. Marcum & Kliegman LLP*, 176 A.D.3d 477, 477 (1st Dep't 2019) ("We find that plaintiffs raised issues of fact as to the adverse nature of their interests vis-à-vis those of their agents, the funds' investment managers, that preclude summary dismissal of the complaint on the ground of the *in pari delicto* defense."); *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985) ("when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose").

---

*Deriv. Litig.*, 127 Nev. 196, 214–25 (2011) (following *Kirschner*, 15 N.Y.3d at 464), this choice-of-law dispute has no effect on the outcome of the Court's analysis.

EGS cherry-picks quotes to suggest that fraudulent acts of agents are presumed imputed to the corporation, *see* Def. Reply, Dkt. 37 at 2 (quoting *Kirschner*, 15 N.Y.3d at 465–66), conveniently ignoring the barrage of case-law declining imputation when the acts of fraud are made *against* that corporation. This is not a matter of an "innocent insider exception to the *in pari delicto* doctrine" where those who employ wrongdoing agents can claim to have turned a blind eye, *id.* at 2 (citing *Kirschner*, 15 N.Y.3d at 476–77); instead, Plaintiffs contend they themselves are the victims.[3]

EGS argues that Plaintiffs benefitted from Page's actions as their agent, and that the adverse interest doctrine cannot apply when the principal benefits from the agent's actions, therefore precluding its application here. Def. Mem. at 14–15. In support, EGS asserts that Page's assignment of his patent applications constituted a benefit because it allowed the merger to proceed; according to EGS, if the fraudulent conduct "enables the business to survive" (here, by way of the merger), then the adverse interest test is not met. *Id.* at 14 (quoting *Kirschner*, 15 N.Y.3d at 468). First, "the mere continuation of a corporate entity does not *per se* constitute a benefit that precludes application of the adverse interest exception," and the Court should not "[rely] on speculation about the benefits to be derived from the continued existence of an entity." *Conway*, 176 A.D.3d at 477–78. Further, "an ongoing fraud and a continued corporate existence may harm a corporate entity." *Id.* at 478. But more important, the parties dispute whether Page's alleged fraud contributed at all to the survival of the business. *See* Pls. Opp. at 14.[4]

---

[3] EGS notes that Page has asserted in a counterclaim that he filed in the Nevada action that he informed Rocketfuel's president that the patent applications had been abandoned. Def. Mem. at 1–2, 9. This is a question of fact that has not been proven, and, at the motion-to-dismiss stage, the Court must accept the allegations in Plaintiffs' pleadings as true. *Gibbons*, 703 F.3d at 599.

[4] EGS' argument that the patent applications were critical to the survival of the business serves to undermine its later argument that the patent applications were so unimportant to the merger that they had no due diligence obligation to examine them. Def. Mem. at 15–16, 19–20.

Plaintiffs allege that the June 2018 merger would have occurred regardless of Page's assignment of the patent applications. Without the patent applications, the merger would simply have proceeded without Page, and Page would not have been given millions of shares of RBI stock in exchange for the patent applications. *Id.* at 14, 16–17. The Court agrees with Plaintiffs that this cannot be resolved on a motion to dismiss. Even if Rocketfuel or RBI stood to benefit, such a fact-based issue cannot be decided on the pleadings. *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162 (2d Cir. 2014) (collecting cases holding that *in pari delicto* should only be applied on the pleadings if the outcome is plain).

The Court declines to speculate whether EGS is at greater fault than Page. *See* Pls. Opp. at 10–12; Def. Reply at 2–3. Based on the allegations in the Complaint, Page's actions cannot be imputed to Plaintiffs; thus, *in pari delicto* does not apply.

### III.     Rocketfuel Has Properly Stated a Legal Malpractice Claim, but RBI Has Not

EGS next argues that Plaintiffs fail to state a claim for legal malpractice under New York law. In New York, legal malpractice requires a showing that: (1) the attorney was negligent; (2) the negligence was the proximate cause of the plaintiff's injury; and (3) the plaintiff suffered actual damages. *Collins v. Felder*, 785 F. App'x 8, 10 (2d Cir. 2019) (citations omitted). EGS argues that Plaintiffs have failed adequately to allege any element of a malpractice claim. The Court finds that Rocketfuel has stated a claim for legal malpractice but that RBI lacks standing to make such a claim.

### A. Rocketfuel Has Adequately Alleged Negligence By EGS, but RBI Does Not Have Standing

#### 1. Rocketfuel Has Adequately Alleged That EGS Breached a Duty to Investigate the Patents

EGS contends that it cannot be negligent for failing to disclose information that Rocketfuel knew. It bases its argument primarily on the fact that Rocketfuel's Audited Financial Statements from June 28, 2018 stated that the patent applications had no value. Def. Mem. at 15–16 (citing Touitou Decl., Dkt. 34-7, Ex. 7, F-10) ("No value was ascribed to the intellectual property rights since no patents have been issued and there can be no assurance that any patents will be issued"). EGS conflates the applications' monetary value at the time of assignment and their legal validity, which is the basis for the malpractice claim. Pls. Opp. at 17. Plaintiffs' allegations are not that EGS' due diligence failed to detect that the potential patents were financially valueless but rather that its due diligence failed to detect that the patent applications had been abandoned and were legally deficient. SAC ¶¶ 33–34.

EGS also argues that the patents were not within the purview of the Engagement Agreement, which made no express mention of them, *see generally* Ex. A, and that Rocketfuel had informed EGS that the patents were "not critical to the business", which EGS contends eliminates the possibility that any due diligence failure on its part could be negligent. Def. Mem. at 15–16 (citing Touitou Decl., Dkt. 34-4, Ex. 4).

There is no dispute that EGS asked Rocketfuel directly about the importance of the patents, and Rocketfuel responded, in full:

> The patents are not critical to the business. With no patents at all, RocketFuel will be first to develop and first to market — there is no competition today. After a few years, competition will be discouraged from entry into this area because of our patent portfolio. But today, the patent position is not critical and RocketFuel will be able to proceed identically as if they did not have any patents.

Ex. 4 at 4. As a whole the statement is ambiguous. While the first and last sentences suggest that Rocketfuel did not view the patents as immediately critical to its business, the balance of the statement clearly indicated that Rocketfuel saw its patent portfolio as having future value.

In terms of whether the patents were within the purview of the engagement, Plaintiffs rely entirely on one sentence in the Engagement Agreement that required EGS to "supervise and manage all necessary due diligence" in order to effectuate the merger. Pls. Opp. at 16 (quoting Ex. A at 1). Persuasive to the argument that this language was all-encompassing is the fact that, in another section of that agreement, intellectual property work was expressly excluded from the scope of EGS' retention post-acquisition. *Id.* at 16 n.14; Ex. A at 1. Even more persuasive is the fact that, prior to the merger, EGS actually investigated and discovered failures to transfer the deficient patent applications. SAC ¶¶ 62–78, 94–95; Pls. Opp. at 5–6. That supports the inference that EGS itself saw the patents as being within the scope of its pre-merger due diligence.

Plaintiffs' SAC survives this attack. They have plausibly alleged that part of EGS' due diligence obligation was to evaluate the validity of the patents. *See* SAC ¶¶ 10, 12, 15–16, 27, 29, 61–72. While EGS may be able to provide proof in discovery that investigation of the validity of the patents was not part of its required due diligence, that is not a basis to dismiss for failure to state a claim.

### 2. RBI Does Not Have Standing To Assert a Legal Malpractice Claim

EGS argues that RBI has no standing to assert a legal malpractice claim, because it was not a party to the Engagement Agreement and, in fact, was on the opposite side of the merger transaction. Def. Mem. at 16–18, 17 n.40. Plaintiffs argue that RBI (at the time, B4MC) *was* a party to the Engagement Agreement because the agreement covered Rocketfuel "and its

8

affiliates." Pls. Opp. at 17–18 (citing Ex. A at 1). As EGS points out, however, RBI was not an affiliate of Rocketfuel at the time the Engagement Agreement was executed. Def. Reply at 7. On the other hand, the Engagement Agreement clearly contemplated work for RBI post-acquisition. Ex. A at 1–2.

Although EGS was retained to work for both companies eventually, pre-merger it was retained to represent Rocketfuel to, *inter alia*, conduct due diligence. Because EGS owed RBI no duty of care, RBI does not have standing to assert a legal malpractice claim arising from EGS's pre-merger due diligence. A company on the other side of a merger transaction has no attorney-client relationship with the other company's attorneys. *Learning Annex, L.P. v. Blank Rome LLP*, 106 A.D.3d 663, 633–34 (1st Dep't 2013) (affirming dismissal of complaint for lack of attorney-client relationship or privity relationship with company on other side of merger transaction) (citations omitted).

Plaintiffs argue that the near-privity doctrine creates the necessary relationship between EGS and RBI to confer standing. Pls. Opp. at 18. The near-privity doctrine creates liability between attorneys and non-clients when (1) the attorney knows his statement will be used for a particular purpose; (2) a known party relies on the statement in furtherance of that purpose; and (3) the attorney engages in some conduct that links the attorney to the relying third-party and evinces his understanding that the third party will be relying on the attorney's statement. *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 384 (1992) (citing *Credit Alliance Corp. v. Andersen & Co.*, 65 N.Y.2d 536, 551 (1985)). This sort of situation generally arises in the context of attorney representations to third-parties when those representations are for use by the third-party in a way that benefits the attorney's client, as distinct from an attorney's representations to a counterparty of his client (however friendly the

counterparty may be). *Id.* at 385 (holding privity as a third-party beneficiary existed when opinion letter from law firm was for plaintiff third-party's use).

Although RBI was a friendly counterparty, it was not in privity with EGS and the "near privity" doctrine is simply not applicable. Therefore, RBI's legal malpractice claim is dismissed for lack of standing.

## B. Rocketfuel Has Adequately Alleged Proximate Cause

EGS next argues that Rocketfuel[5] has failed to allege adequately proximate cause. Def. Mem. at 18–20. To allege a legal malpractice claim in New York, "the plaintiff must demonstrate that 'but for' the attorney's negligence, plaintiff would have prevailed in the matter in question" — or, as applied here, that Rocketfuel would not have given Page the millions of shares he received. *Knox v. Aronson, Mayefsky & Sloan, LLP*, 168 A.D.3d 70, 75 (1st Dep't 2018) (citation omitted). Most of EGS' argument relies on the fact that, in the related lawsuit in Nevada against Page, Rocketfuel alleges that Page's misrepresentations were the proximate cause of Rocketfuel and RBI's damages. *Id.* But it is well-settled that more than one offending party can be a but-for cause of injury, *Comi v. Breslin & Breslin*, 257 A.D.2d 754, 756 (3d Dep't 1999), and, despite EGS' assertions, *see* Def. Mem. at 18–19, nothing in Rocketfuel's Nevada lawsuit negates the possibility that EGS was also a but-for cause of Rocketfuel's injury. *Comi*, 257 A.D.2d at 756 ("it is plausible that defendants' and the [fraudulent actors'] actions and/or omissions, together, may have contributed to plaintiff's alleged single injury") (citation omitted). Rocketfuel sufficiently alleges in its SAC that, had EGS informed it of the deficiencies in the patents, the merger would not have gone forward in the exact manner that it did, and that without

---

[5] Because the Court has dismissed the legal malpractice claim by RBI, the rest of this section refers only to Rocketfuel.

EGS' affirmative disclosure to Rocketfuel of those deficiencies, Rocketfuel would not have uncovered them through other means. Pls. Opp. at 2–3; SAC ¶¶ 25–26, 34–37, 48(e)–(f), 58–61, 84–86, 91–92, 94–95.[6]

EGS also argues that because the acquisition arrangement was a "done deal" before EGS was retained, Rocketfuel cannot sufficiently allege that it "relied on EGS to vet information that they previously investigated in reaching their pre-merger deal." Def. Mem. at 19. Relying on the exchange between Rocketfuel and EGS regarding whether the patents were critical and on the argument that Page's knowledge of the state of the applications was imputed to Rocketfuel, EGS also contends that Rocketfuel knew "that the viability of the patent applications was tenuous." *Id.* As part of its "done deal" argument, EGS proffers that Page assigned his patents to Rocketfuel in January 2018, pursuant to the LOI, and argues that assignment removed the patents from the purview of EGS' due diligence review. *Id.* at 19–20. But a non-binding LOI is not a merger; Rocketfuel retained EGS to effectuate the merger and to conduct a thorough review of everything involved, including the pre-merger, non-binding agreement. EGS could not have prevented the January assignment from occurring, as it was not hired until March; but it could plausibly have prevented the merger from closing in June 2018 predicated in part on a belief that Rocketfuel held valid assignments of the patent applications.

### C. Actual Damages

EGS next argues that Rocketfuel has failed to plead actual damages resulting from EGS' alleged negligence. Def. Mem. at 20–23. The standard for pleading actual damages in a legal malpractice claim in New York is "merely whether or not the complaint sets forth allegations from which damages can properly be inferred." *Gottlieb, Rackman & Reisman, P.C. v. ZenColor*

---

[6] The Court notes, however, that it is a bit of stretch to say that EGS was retained to investigate Page "for possible fraud," Pls. Opp. at 22, even if assessing the patent applications fell within EGS' due diligence obligation.

*Corp.*, 13-CV-5715, 2015 WL 4206982, at *5 (S.D.N.Y. July 10, 2015) (citation omitted).  There is no need for Rocketfuel's damages to be computed precisely at this stage.  Under this standard, the Court finds Rocketfuel has properly pled actual damages resulting from EGS' alleged negligence.

Rocketfuel has alleged that Page received RBI shares that he would not otherwise have received, valued at $9 per share at the time of the reverse merger.  SAC ¶¶ 22, 92.  According to Rocketfuel, this amounts to actual damages, because it suffered the loss of the shares Page gained without receiving anything of value in return as consideration.  Pls. Opp. at 23–24.

EGS' argument focuses on Rocketfuel's valuation of the shares and financial statements that purportedly undermine that valuation.  Def. Mem. at 20–23.  Because RBI (at the time, B4MC) "was a shell company with no assets and no liabilities," EGS argues Page could not have obtained any value when he received the RBI shares.  *Id.* at 20–21 (citations omitted).  Moreover, the fact that Rocketfuel "assigned no value to the five patent applications assigned to the company" meant that it could not be damaged by the transaction.  *Id.* at 21–23.  EGS also argues that Rocketfuel's $9 per share valuation should be disregarded because "the proper measure of damages is based at the time of the merger."  *Id.* at 22–23 (citation omitted).  Finally, EGS argues Page neither received nor conveyed anything of value.  *Id.* at 23.

Rocketfuel's asserted valuation of RBI's shares is based on quoted share prices at "the time of the closing of the merger in June 2018," Pls. Opp. at 23, and EGS asserts such a price cannot capture the true market value of an asset-less shell company, *see* Def. Mem. at 23; Def. Reply at 9.  The Court "need not wade into the thick of the parties' dispute at this juncture." *Barack v. Seward & Kissel, LLP*, 16-CV-9664, 2017 WL 4023141, at *6 (S.D.N.Y. Sept. 12, 2017) (citation omitted).  Rocketfuel is pleading specific damages with respect to an exchange

for shares that it alleges would not have occurred had it known of the deficient patent applications.[7] EGS suggests that Rocketfuel is alleging "lost profits on a start-up venture, which are too speculative to sustain a claim," as opposed to the direct loss of the value of shares. Def. Reply at 9 (citation omitted). But Rocketfuel has not alleged lost profits but lost *value*; based on the value of RBI shares at the time of the transaction. While Rocketfuel may not ultimately be able to prove the shares were each worth $9 at the time, that possibility does not render the alleged damages conclusory. *See*, *e.g.*, *Barack*, 2017 WL 4023141, at *6 (finding damages adequately pled where plaintiff sought lost value damages in legal malpractice case). Rocketfuel does not contest that the patent applications were not assigned value in financial audits or that RBI, as a startup, was a financially risky venture. Pls. Opp. at 23–24. Instead, Rocketfuel pleads damages from the transfer of shares that it asserts it otherwise would not have transferred. *Id.* at 24. That is enough to meet the pleading standard.

In short, Rocketfuel has adequately alleged all of the elements of a legal malpractice claim against EGS.

### IV.    Duplicative Claims

EGS argues that, should the legal malpractice claim survive, Plaintiffs' breach of contract and breach of fiduciary duty claims should be dismissed as duplicative of the legal malpractice claim. Def. Mem. at 23–24. New York law requires dismissal of claims that are "premised on the same facts" and that "seek relief identical to that sought in a legal malpractice cause of action" because they are "redundant." *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison,*

---

[7]    Damages allegations are found to be conclusory in legal malpractice claims when plaintiffs allege that they incurred generalized "additional legal fees" or "damages and expense" without providing any specifics. *Katsoris v. Bodnar & Milone, LLP*, 186 A.D.3d 1504, 1506 (2020) (citation omitted).

*L.L.P.*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) (citation omitted).[8]

Rocketfuel's legal malpractice claim alleges damages from EGS' failure to exercise the applicable standard of care during due diligence. SAC ¶¶ 104–108. Its breach of contract claim seeks recovery of fees paid to EGS because it failed to conduct adequate due diligence, *id.* ¶¶ 109–112, and its breach of fiduciary duty claim seeks unspecified damages because EGS failed to apprise Rocketfuel of the "facts as to the status of the patent applications", *id.* ¶¶ 113–119. Rocketfuel points to case-law in which a breach of contract claim was permitted to proceed when the attorney made "a promise to perform" and then did not perform, *Reidy v. Martin*, 77 A.D.3d 903, 903 (2d Dep't 2010), and in which a breach of fiduciary duty claim was permitted to proceed when the attorney allegedly participated in or committed a wrongdoing against his client, *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 558–59 (E.D.N.Y. 2015). Pls. Opp. at 24. Those examples are obviously distinguishable from the facts alleged here.

In its breach of contract claim, Rocketfuel alleges exactly the same conduct as it does in its legal malpractice claim — namely, that EGS failed to perform properly the due diligence required by its contract with Rocketfuel. Def. Reply at 10. Rocketfuel's breach of fiduciary duty claim also arises from the same facts and alleges the same damages as the legal malpractice claim, which typically indicates it is a duplicative claim. *Id.* Even alleging in passing that EGS' actions may have been "intentional" does not distinguish the breach of fiduciary duty claim from the legal malpractice claim. Rocketfuel does not allege breach of the duty of loyalty based on collusion; the breach of the duty of loyalty is based entirely on the same actions as underlie the

---

[8] Because the Court has determined that RBI has no standing to pursue a legal malpractice claim, RBI's breach of contract and breach of fiduciary duty claims are necessarily not duplicative. But because these two claims pertain to EGS' work for Rocketfuel pre-merger, EGS was still not working for RBI, so RBI continues to lack standing as to these claims. *Learning Annex, L.P.*, 106 A.D.3d at 633–34.

legal malpractice claim. *Neogenix Oncology, Inc.*, 133 F. Supp. 3d at 558–59. Therefore, Rocketfuel's breach of contract and breach of fiduciary duty claims are dismissed as duplicative.

### V. Plaintiffs' Declaratory Judgment Claims Do Not Present a Case or Controversy

Finally, EGS argues that Plaintiffs' three claims for declaratory relief with respect to potential affirmative defenses do not present a case or controversy. Def. Mem. at 24–25. The declaratory relief sought pertains to the legal effect *vel non* of a general release contained in a settlement agreement through which the parties settled an earlier dispute regarding unpaid legal fees. SAC ¶¶ 120–54. The Court is persuaded that Rocketfuel is not entitled to declaratory relief. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, is not intended "to test the validity of an affirmative defense that a plaintiff anticipates the defendant will assert." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 407 (S.D.N.Y. 2012) (citations omitted). Unless and until a defense is actually asserted, there is no justiciable question because there is no concrete controversy to resolve. Because EGS has not yet asserted the release as an affirmative defense (and may never do so), Plaintiffs are seeking an impermissible advisory opinion. *Id.* (citations omitted).[9] The parties will have an opportunity to litigate the legal import of the release in question should EGS assert it as an affirmative defense. If EGS does not assert the release as an affirmative defense, the defense will be waived. Either way, Plaintiffs' requests for declaratory judgments are dismissed.

### CONCLUSION

For the foregoing reasons, Rocketfuel's claims against EGS for breach of contract, breach of fiduciary duty, and declaratory judgment and all claims by RBI are dismissed. Rocketfuel's

---

[9] The factors elucidated by the Second Circuit, to which Plaintiffs cite, regarding when to grant declaratory relief still require the presence of an "actual controversy." Pls. Opp. at 25 (citing *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003)).

legal malpractice claim against EGS, however, survives. Therefore, the stay on discovery that the Court ordered on April 23, 2021, *see* Dkt. 19, is hereby LIFTED. A pretrial conference is scheduled for **Friday, January 21, 2022, at 3:30 p.m.**. The conference shall be conducted by telephone, and the parties should dial in to the teleconference at: 888-363-4749 // Access Code 3121171# // Security Code 1764. The parties are ordered to submit a joint letter of no more than five pages and proposed Case Management Plan in accordance with the Court's order at Docket 6 not later than **January 13, 2022.**

The Clerk of Court is respectfully directed to close the open motion at Docket 33.

**SO ORDERED.**

**Date:  January 7, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**