

# SCAROLA ZUBATOV SCHAFFZIN PLLC

**Richard J.J. Scarola**
rjjs@szslaw.com
(212) 937-0008

April 5, 2023

Hon. Valerie E. Caproni
United States District Judge
United States District Court —
 Southern District of New York
40 Foley Square, Room 240
New York, NY  10007

*Re: RocketFuel Blockchain Company v. Ellenoff Grossman*
*& Schole LLP,* Case No. 1:21-cv-01764-VEC

Dear Judge Caproni:

We are plaintiff's former counsel in this case.  While we are cognizant that Your Honor's Individual Practices do not specifically provide for pre-motion conference letters, this is a situation in which holding a conference could resolve some issues that would otherwise be subject to motion practice and establish a procedure to address additional issues.

The issues our arise from our firm's charging lien under New York Judiciary Law §475.  Plaintiff has failed to pay approximately $120,000 in legal fees for our services, we have a charging lien by operation of law (Judiciary Law §475) stemming from our representation of plaintiff in this case, a settlement amount appears to have been paid to plaintiff and to plaintiff's current counsel, disregarding our charging lien rights, and our repeated attempts at correspondence on this subject with plaintiff through its present counsel, Andrew Bluestone, and with defendant Ellenoff Grossman & Schole LLP ("EGS") have yielded no response whatsoever in the case of EGS and a response refusing to recognize our charging lien rights by Mr. Bluestone.  Because of these circumstances — and because, as well, of what we understand to be plaintiff's precarious financial situation (detailed further below), making potential insolvency possible in the very near future — we either need these parties to set aside funds to ensure that our charging lien is protected as the law requires, or else we need to file a motion to ask this Court to enjoin RocketFuel (and possibly others) to hold sufficient funds in escrow to provide for that charging lien pending determination of its precise amount.  We are filing this letter in the hope that the issue of securing the funds may be resolved on consent without the need for such motion practice and to chart a course for determination of our charging lien.  We describe the most relevant law and facts below.

1. <u>SZS's Fee Entitlement and Procedural History</u>

We filed this case on behalf of plaintiff and its affiliate and represented them in successfully opposing a motion to dismiss to plaintiff in most respects.  Shortly after that, however, we received an email (on January 18, 2022) from plaintiff's CFO and in-house counsel stating that, in order to save costs, plaintiff would be switching to an attorney (Mr. Bluestone)

## SCAROLA ZUBATOV SCHAFFZIN PLLC

willing to represent it on a contingency basis.  The email, in relevant part, made it crystal-clear that the reason for the substitution of counsel was cost-savings and not the quality of our services:  "Our board has made the determination to switch to a contingency fee attorney for the EGS case.  This was done primarily as a cost-savings matter; please do not take it as a reflection on the quality of your services."  At the time, we had open billings pursuant to our hourly retainer agreement totaling $119,846.24 and sent invoices to plaintiff the same day for the amount at issue.  Plaintiff retained those invoices for many months, not objecting to them in any respect, and, after several demands for payment from us, sent an email to us, dated August 12, 2022, promising partial payment the following week and the rest to come shortly thereafter:  "Thank you for your email and for following up.  Sorry it has taken so long to respond.  The Company will be making a partial payment to your firm early next week.  We are hoping to settle this matter with [EGS] and/or obtain funding fairly soon."  However, the promised payment, whether full or partial, was never made.

We filed a plenary action in New York State Supreme Court (*Scarola Zubatov Schaffzin PLLC v. RocketFuel Blockchain, Inc.* et al., Index No. 652887/2022) — coincidentally filed earlier the same day as the August 12, 2022 email but not served until some time later to give plaintiff a chance to make good on their email's promise to pay — to collect our owed fees.  In that action, after the judge denied the RocketFuel companies' motion to dismiss the case, despite the clear trail of email communication utterly refuting such a defense, the RocketFuel companies have asserted in their answer that they terminated our firm for cause (they also asserted a purely frivolous counterclaim for malpractice that they have, since, voluntarily discontinued).

During the pendency of our state court action, on February 17, 2023, this case settled.  *See* Dkt. 76 & 78.  Plaintiff's latest 10-Q filing, made on April 3, 2023 and available at https://app.quotemedia.com/data/downloadFiling?webmasterId=90423&ref=317380957&type=HTML&symbol=RKFL&companyName=RocketFuel+Blockchain+Inc&formType=10-Q&formDescription=General+form+for+quarterly+reports+under+Section+13+or+15%28d%29&dateFiled=2023-04-03 (last visited on April 5, 2023), states, at p. 21 thereof, the amount of the settlement ($750,000) and makes clear that $525,000 of it was paid over to plaintiff on February 14, 2023, with the remaining $225,000 going to Mr. Bluestone in payment of legal fees:

> "On February 8, 2023 we entered into a settlement agreement with EGS, pursuant to which EGS agreed to pay us $750,000 in full settlement of the lawsuit.  After payment of our legal fees, the net payment to us, which was received on February 14, 2023, was $525,000.  As part of the settlement (i) we have agreed to dismiss the lawsuit with prejudice and (ii) each party has agreed to grant a mutual general release to the other party and its affiliates, related parties and agents."

Notably, the settlement was made and apparently paid over without providing in any way for our statutory charging lien.

## SCAROLA ZUBATOV SCHAFFZIN PLLC

2. SZS's Statutory Charging Lien and the Parties' Refusal to Acknowledge that Lien

Governing law provides that we may simultaneously maintain the state court plenary action and seek a determination of the charging lien in this action, *see, e.g., Levy v. Laing*, 43 A.D.3d 713, 715 (1st Dept. 2007) (holding that the attorneys three remedies — a retaining lien, charging lien and plenary action — "are not exclusive but cumulative"), and we are permitted to proceed by motion in this Court to have our charging lien determined. *See, e.g., Miller v. Kassatly*, 216 A.D.2d 260, 261 (1st Dept. 1995) ("Judiciary Law § 475, which establishes a statutory attorneys' lien, permits enforcement of the lien either by way of motion in the main action or by plenary action").[1]  We plan to do so, and would discuss procedures the Court would prefer for the motion at a conference if the Court is inclined, given that the form and content of such motions are not specified in any detail in any rule.

Under applicable law, our charging lien came into existence automatically upon our commencement of this action on plaintiff's behalf, by operation of law, without the need for further notice or filing of any sort.  *See, e.g., D.A. of New York County v. Republic of the Philippines*, 307 F. Supp. 3d 171, 222 (S.D.N.Y. 2018) ("Under Judiciary Law § 475, a charging lien automatically comes into existence, without notice or filing, upon commencement of the action"); *Ruiz v. Keratin B. Inc.*, 17-CV-2216 (VEC), 2020 WL 7079904, at *3 (S.D.N.Y. Dec. 3, 2020) ("Pursuant to New York statute, a discharged attorney is entitled to a charging lien on any monetary recoveries obtained by the former client in the case to the extent the attorney rendered legal services. *See* N.Y. Judiciary Law § 475 (McKinney 2013) ('From the commencement of an action ..., the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor....'); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998) (providing that N.Y. Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York)").

It is also unquestionably the case that both the EGS defendant and Mr. Bluestone, not to mention plaintiff itself, had an obligation to protect our charging lien.

Caselaw clearly establishes that a defendant in an underlying action that pays a settlement while on notice of the former attorney's charging lien does so at its peril. *See, e.g., Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 189–90 (1st Dept. 2002) ("a defendant's payment of settlement proceeds, while on notice of a charging lien, is made at a defendant's peril"); *see also Haser v. Haser*, 271 A.D.2d 253, 255 (1st Dept. 2000) ("Under New York law, a plaintiff's attorney may enforce her statutory charging lien against the defendant's own assets, if he still possesses the settlement proceeds or knowingly paid them to the plaintiff so as to deprive the attorney of her compensation…. The lien which attaches in the attorney's favor cannot be impaired by a collusive settlement").  This is so even where the

---

[1] A charging lien determination of this kind is without prejudice to other claims in the plenary action for breach of contract, account stated and rights under our additional contractual lien in our retention agreement with the RocketFuel companies.

## SCAROLA ZUBATOV SCHAFFZIN PLLC

defendant has a good-faith belief that the charging lien has been extinguished. *See Schneider*, 302 A.D.2d at 188 ("a defendant, having knowledge of an attorney's lien, is required to retain sufficient funds to pay the lien, even where the defendant has a good faith belief that some event … extinguished the charging lien").

The text of Judiciary Law §475 also states that the charging lien "attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and *the proceeds thereof in whatever hands they may come*." (Emphasis added.) What this, of course, means is that, similar to the determinations in the *Schneider* case above (among others), payment of the portion of a settlement constituting attorneys' fees to new counsel, *i.e.*, Mr. Bluestone, likewise falls within the scope of the former attorneys' charging lien and is subject to that lien. *See id*. at 190 ("Clearly, the City had notice of plaintiff's lien. Its attorney, Mr. Levi, knew about the Schneider firm's involvement and claims in the *Mills* action, even advising them of the failure to include them in the compromise order. When it paid Jordan and Frederick the full $218,000 attorneys' fees portion of the settlement, it did so at the risk of being sued by the Schneider firm for its share of the award. As aptly stated by the Second Department, 'a defendant who has knowledge of a plaintiff's attorney's lien is under an affirmative duty to protect the lien, and if he fails to do so, he is liable for the reasonable value of that attorney's services to his client'"); *see also White v. White*, 107 Misc. 2d 551, 554 (Sup. Ct. Nassau Cnty. Jan. 22, 1981) ("the Court determines that the outgoing attorney has a charging lien on sums awarded either by the judgment of divorce or payable as part of any settlement *as counsel fees to plaintiff or her present attorneys*" (emphasis added)); 2 Law and the Family New York § 27:4 (2022 ed.) ("It has been held that an award for counsel fees is subject to a charging lien, against both the client and subsequent counsel"); *Levitas v. Levitas*, 96 Misc. 2d 929, 932 (Sup. Ct. N.Y. Cnty. Nov. 2, 1978) ("nothing in Section 475 of the Judiciary Law precludes the enforcement of such a lien upon an award of counsel fees to the client or to subsequent counsel").

Despite this clear caselaw, our repeated attempts to protect our charging lien through communications with EGS and Mr. Bluestone have been unsuccessful. Two emails to EGS to ensure that our charging lien would be provided for have gone unanswered, and as to Mr. Bluestone, he has stated, in a recent email of April 3, 2023: "There are no funds secured by any lien…. While you do have a lien based upon work that you performed, and potentially on the basis of an award in *quantum meruit*, you do not have the right to secure any specific funds pursuant to that lien." As to his own personal liability for the legal fees from the settlement of this action that he has received without providing for SZS's charging lien, he has also stated, in an email of the same day, "I remind you that I do not have and never had any settlement funds of Rocketfuel's…. and that under these circumstances I do not owe you a duty." Such statements are, of course, inconsistent with the law described above and heighten our concern and need to seek this Court's intervention.

3. The Financial Exigencies Prompting Expeditious Action

Making our intended present course of action especially time-sensitive is the fact that, as most recent RocketFuel's 10-Q shows (at p. 6 thereof), the company is down to less than

## SCAROLA ZUBATOV SCHAFFZIN PLLC

$400,000 in cash on hand as of the end of December 2022.  The 10-Q plainly states, moreover (at p. 20 thereof), that the company's continued viability is in doubt:

> "During the nine months ended December 31, 2022, we reported a net loss of $3,527,170, which included non-cash stock-based compensation of $1,287,048 and $540,059 of gain from a legal settlement, and cash flows used in operating activities of $483,865.  These factors, among others, raise substantial doubt about the ability of the Company to continue as a going concern."

Additionally, the 10-Q (at p. 16 thereof) reveals that after the $525,000 settlement payment was made to RocketFuel by ESG on February 14, 2023, rather than use the funds to pay fees owed to us or, at the very least, protect our charging lien, the very next day, $200,000 of that amount was used to repay a loan from RocketFuel's own CEO that had apparently been made less than one month earlier (on January 18th).

      In light of these circumstances, if the parties cannot agree to hold funds in reserve to provide for our charging lien, we must and will proceed immediately to move, pending determination of the amount of our charging lien, for injunctive relief requiring funds to be held in escrow to support that lien.  *See, e.g., Klein v. Eubank*, 232 A.D.2d 183, 183 (1st Dept. 1996) ("Order, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about April 2, 1996, which granted plaintiff attorney's motion for a preliminary injunction and an accounting, *inter alia,* enjoining respondents clients from disposing of the escrow funds released to them by the Commissioner of Finance of the City of New York pursuant to an order in a related action, and directing respondents to redeposit the fund into escrow, provide petitioner with proof of such deposit, and render an accounting of the escrow proceeds prior to January 16, 1996, the effective date of the temporary restraining order issued herein, unanimously affirmed, with costs.  The Court of Appeals has determined that petitioner has an enforceable charging lien against the proceeds of the settlement in question, provided there was just cause for his withdrawal….  That being given, the preliminary injunctive relief granted by the motion court on remand appropriately returns the parties to the status quo that existed prior to the reversed order granting summary judgment to respondents, and protects petitioner's potential right to recover the reasonable value of his services").

      We ask that the Court schedule a conference to address these issues in the hope that an agreement may be reached and motion practice simplified.

                                                 Respectfully submitted,

                                                 /s/ Richard J.J. Scarola
                                                    Richard J.J. Scarola

By ECF